UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Francisco T., | File No. 25-CV-03219 (JMB/DTS) |
| Petitioner, | |
| v. | |
| Pamela Bondi, *Attorney General*; Kristi Noem, *Secretary, U.S. Department of Homeland Security*; Department of Homeland Security, Todd M. Lyons, *Acting Director of Immigration and Customs Enforcement*; Immigration and Customs Enforcement; Sirce Owen, *Acting Director for Executive Office for Immigration Review*; Executive Office for Immigration Review; Peter Berg, *Director, Ft. Snelling Field Office Immigration and Customs Enforcement*; and Joel L. Brott, *Sheriff of Sherburne County*, | **ORDER** |
| Respondents. | |

David L. Wilson, Cameron Lane Youngs Giebink, and Clara Ester Fleitas-Langford, Wilson Law Group, Minneapolis, MN, for Petitioner Francisco Javier Tiburcio Garcia.

Ana H. Voss and Lucas B. Draisey, United States Attorney's Office, Minneapolis, MN, for Respondents Pamela Bondi, Attorney General, Kristi Noem, Department of Homeland Security, Todd M. Lyons, Immigration and Customs Enforcement, Sirce Owen, Executive Office for Immigration Review, Peter Berg, Fort Snelling Field Office Immigration and Customs Enforcement, and Joel L. Brott, Sherburne County Sheriff's Office.

1

This matter is before the Court on Petitioner Francisco T.'s motion for a preliminary injunction[1] against Respondents Pamela Bondi, Attorney General, Kristi Noem, Department of Homeland Security (DHS), Todd M. Lyons, Immigration and Customs Enforcement (ICE), Sirce Owen, Executive Office for Immigration Review (EOIR), Peter Berg, Fort Snelling Field Office ICE, and Joel L. Brott, Sherburne County Sheriff's Office (together, Respondents). (Doc. No. 3.) For the reasons explained below, the Court grants the motion.

## BACKGROUND

### A. Petitioner's Arrest and Detention

Petitioner is a native and citizen of Mexico who entered the United States without inspection more than a decade ago and has resided in the United States ever since. (Doc. No. 1 ¶¶ 32, 37; Doc. No. 7-2.) On July 25, 2025, agents of the Grand Forks Sector Border Patrol and ICE St. Paul Field Office arrested Petitioner at a gas station by for being illegally present in the United States. (Doc. No. 1 ¶ 45; Doc. No. 7-3 at 2.) Respondents served Petitioner with a Notice to Appear in Immigration Court, thereby initiating removal proceedings under 8 U.S.C. § 1229a. (Doc. No. 7-2.)

On August 3, 2025, Petitioner requested a bond redetermination hearing before the Immigration Court in Fort Snelling, Minnesota. (Doc. No. 1 ¶ 48; Doc. No. 7-4.) On

---

[1] The motion was initially filed by Petitioner as an Emergency Motion for a Temporary Restraining Order and Preliminary Injunction. (*See* Doc. No. 3.) Since that time, counsel for Respondents entered their appearances and responded to Petitioner's motion, and, at the hearing on this motion on August 27, 2025, the parties agreed to construe the motion as a Motion for Preliminary Injunction.

August 5, 2025, after a hearing, an Immigration Judge (IJ) denied the requested redetermination on the grounds that Petitioner was "properly categorized as an applicant for admission, and the Court does not have jurisdiction to release [him] under INA Section 235(b)(2)."[2] (Doc. No. 7-5 at 3.)

Two days later, Petitioner appealed the IJ's decision to the Board of Immigration Appeals. (Doc. No. 7-6.) While that appeal is pending, Petitioner remains detained at Sherburne County Jail.

B.   **This Action**

On August 12, 2025, Petitioner filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Petition). (Doc. No. 1.) The Petition seeks various forms of relief, including: (1) an order restraining Respondents from attempting to move him from the State of Minnesota while this petition is pending; (2) an order requiring Respondents to provide seventy-two hours' notice of their intent to move him; (3) expedited review pursuant to 28 U.S.C. § 1657; (4) an order directing Respondents to hold a bond hearing or to release Petitioner immediately; (5) declarations that Respondents' refusal to provide Petitioner a bond hearing is arbitrary and capricious and violates applicable regulatory, statutory, and constitutional requirements; and (6) reasonable attorney fees and costs.

---

[2] INA § 235(b)(2) is codified within 8 U.S.C. § 1225(b)(2). Petitioner explains that the IJ's determination was made pursuant to a policy memorandum announced by ICE, "in coordination with" the Department of Justice, on July 8, 2025, entitled, "Interim Guidance Regarding Detention Authority for Applicants for Admission," which claims that all persons who entered the United States without inspection are subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) as "applicants for admission." (Doc. No. 1 ¶¶ 40–41; Doc. No. 5 at 3; *see also* Doc. No. 7-7.)

3

(Doc. No. 1 at 31–32.)  On that same day, Petitioner also filed an emergency motion seeking injunctive relief; specifically, he sought a temporary restraining order (TRO) to enjoin Respondents from moving him outside of the District of Minnesota for the duration of this action and to require Respondents to provide him with a bond hearing in accordance with 8 U.S.C. § 1226(a)(2)(A) within seven days.  (Doc. No. 3 at 3).

The following day, the Court granted Petitioner's TRO in part; the Court enjoined Respondents from removing him from this District (TRO Order).[3]  (Doc. No. 10.) However, the Court reserved ruling on Petitioner's request for Respondents to provide him with a bond hearing until it received further briefing and the parties came before the Court for a hearing on August 27, 2025.  (Doc. Nos. 11, 14, 16.)

## DISCUSSION

Petitioner now asks the Court to convert the TRO into a preliminary injunction and to modify the relief requested to include an order requiring Respondents to provide Petitioner with a bond hearing in accordance with 8 U.S.C. § 1226(a)(2)(A).  Respondent argues that section 1226 does not apply to Petitioner.

---

[3] The Court also ordered Respondents to file a letter indicating whether they would agree not to move Petitioner outside of the District of Minnesota pending resolution of his Petition.  (Doc. No. 10 at 6.)  Respondents thereafter filed a declaration agreeing not to remove Petitioner from this District pending the resolution of Petitioner's habeas proceeding with the caveat that ICE may still give seventy-two hours' notice to obtain permission from the Court to move Petitioner in the event of "unforeseen circumstances or contingencies."  (Doc. No. 12 ¶ 14.)

4

When considering a motion for a preliminary injunction, courts consider the following four familiar factors: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981); *see also Tumey v. Mycroft AI, Inc.*, 27 F.4th 657, 665 (8th Cir. 2022) ("[T]he standard for analyzing a motion for a temporary restraining order is the same as a motion for a preliminary injunction . . . ."). No one factor is determinative, and courts "flexibly weigh the case's particular circumstances to determine whether the balance of equities so favors the movant that justice requires the court to intervene." *Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc.*, 182 F.3d 598, 601 (8th Cir. 1999) (internal quotation marks omitted). The moving party bears the burden to establish these factors. *E.g.*, *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003). The Court concludes that, based on the record before it, the balance of the *Dataphase* factors favors granting Petitioner's request for a bond hearing and maintaining the injunctive relief previously ordered.

    **A.**    **Probability of Success on the Merits**

The Court first considers the Petitioner's probability of success on the merits of his underlying Petition. *Dataphase*, 640 F.2d at 114.

Petitioner contends that his detention is governed by 8 U.S.C. § 1226. Section 1226 sets forth a discretionary process for the apprehension and detention of noncitizens who are already present in the United States and eligible for removal, and states that, except as

5

provided in section 1226(c),⁴ "the Attorney General 'may release' [a person] detained under § 1226(a) 'on . . . bond' or 'conditional parole.'" *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018) (quoting § 1226(a)).  As a result, Petitioner contends that he is not subject to mandatory detention and is instead entitled to a bond hearing.

For their part, Respondents contend that Petitioner is not detained under section 1226.  Instead, Respondents argue that Petitioner's detention is governed by 8 U.S.C. § 1225, which requires mandatory detention pending removal proceedings.  Section 1225 provides in relevant part that, "in the case of [a person] who is an applicant for admission, if the examining immigration officer determines that [the person] seeking admission is not clearly and beyond a doubt entitled to be admitted, the [person] *shall* be detained for a proceeding."  8 U.S.C. § 1225(b)(2)(A) (emphasis added).⁵  In other words, detention under section 1225(b)(2) is mandatory.

Thus, the Court must evaluate the contrary interpretations of sections 1225(b)(2) and 1226(a) and determine the likelihood that Petitioner can prevail in his argument that, as a matter of law, he is detained pursuant to section 1226(a) and not pursuant to section 1225(b)(2) as Respondents suggest.  The Court concludes that this factor favors Petitioner for three reasons.

---

⁴ The exception under § 1226(c) applies to noncitizens who have committed certain criminal offenses or terrorist activities not at issue in this case. *Jennings*, 583 U.S. at 289.

⁵ Both parties agree that detention under § 1225(b)(1) is inapplicable.

First, Petitioner is likely to prevail because of the plain meaning of the terms used in sections 1225(b)(2) and 1226(a). When interpreting a statute, "every clause and word of a statute should have a meaning." *United States, ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023) (quoting *Montclair v. Ramsdell,* 107 U.S. 147, 152 (1883)). Noncitizens who have been residing in the United States but who entered without inspection have not, historically, been considered to still be "arriving" under section 1225(b). This is because the statute itself states that, in order to apply, several conditions must be met; specifically, an immigration officer must determine that the noncitizen "is an applicant for admission . . . seeking admission . . . and not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A). Determining the plain meaning of the statute requires consideration of the tense of the verb "is" and the present participle "seeking." Here, section 1225(b)(2) applies to persons who presently are applicants for admission and who presently are seeking admission at the time of their detention. To be seeking admission means to be seeking entry, which "by its own force implies a coming from outside." *United States ex rel. Claussen v. Day*, 279 U.S. 398, 401 (1929).

Here, the parties agree that Petitioner has resided within the United States for the past ten years. Therefore, Petitioner is not currently "seeking admission" into the United States, based on the plain meaning of that term. Comparatively, as a noncitizen who is already present in the United States and may be eligible for removal, Petitioner more clearly falls under a plain text reading of section 1226(a). As other courts have observed, "[t]aken together these two statutes principally govern the detention of non-citizens pending removal proceedings—section 1225 governs detention of noncitizens 'seeking

7

admission into the country,' whereas section 1226 governs detention of non-citizens 'already in the country.'" *Romero v. Hyde*, No. 25-11631-BEM, 2025 WL 2403827, at *7 (D. Mass. Aug. 19, 2025) (quoting *Jennings*, 583 U.S. at 288–89).

Second, Petitioner is likely to prevail because Respondents' interpretation of 1225(b)(2) renders superfluous other immigration laws. Specifically, interpreting section 1225(b)(2) as applying to noncitizens who have already entered the country and are not currently seeking admission into the country, as Respondents urge, would render meaningless a recent amendment to section 1226 by the Laken Riley Act (LRA). The LRA added new categories of noncitizens subject to mandatory detention under section 1226(c), and one such category was for noncitizens lacking valid documentation *and* who have been charged with or convicted of certain crimes. 8 U.S.C. § 1226(c)(1)(E)(i)–(ii). But if Respondents' interpretation of section 1225 was correct, then there would have been no need for the LRA to create these additional categories because all noncitizens who are present in the United States and have not been admitted would have already been ineligible for bond under section 1225(b)(2)(A).

Third, the Court concludes that Petitioner is likely to prevail because other courts have already interpreted the statute as Petitioner does. Although Respondents' arguments are aligned with the Department of Homeland Security's current interpretation of immigration statutes, many courts have rejected Respondents' interpretation of sections 1225(b)(2)(A) and 1226(a). *See Aguilar Maldonado v. Olson*, No. 25-CV-3142, 2025 WL 2374411 (D. Minn. Aug. 15, 2025); *Romero*, 2025 WL 2403827, at *9; *see also, e.g.*, *Martinez v. Hyde*, No. 25-11613-BEM, 2025 WL 2084238 (D. Mass. July 24, 2025);

*Vazsquez v. Bostock*, No. 3:25-CV-05240-TMC, 2025 WL 1193850 (W.D. Wash. Apr. 24, 2025); *Rosado v. Figueroa*, No. CV-25-02157 PHX DLR (CDB), 2025 WL 2337099 (D. Ariz. Aug. 11, 2025); *Lopez Benitez v. Francis*, 25 Civ. 5937 (DEH), 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025); *Arrazola-Gonzalez v. Noem*, No. 5:25-cv-01789-ODW (DFMx), 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025). The Court finds the analysis in these cases persuasive. In contrast, Respondents direct this Court to only a single case, *Pena v. Hyde*, No. 25-11983, 2025 WL 2108913 (D. Mass. July 28, 2025). This case, however, includes no analysis or assessment of the Respondents' arguments or of their current interpretation of sections 1225(b)(2)(A) and 1226(a). Instead, the primary issue in *Pena* was whether the petitioner in that case should remain in detention given that his I-130 petition had been approved at that time. *Id*. Thus, Respondents direct the Court to no legal authority, and the Court is aware of none, to support their statutory interpretation argument.

The Court concludes that Petitioner has demonstrated a high probability of success on the merits of the Petition.

**B.     Threat of Irreparable Harm**

The Court next considers whether Petitioner has demonstrated that, absent the requested relief, he will suffer irreparable harm. *Dataphase*, 640 F.2d at 114. Since Petitioner's detention on July 25, 2025, Petitioner has been held at the Sherburne County Jail, which is similar to a criminal detention, under the pretense that his detention is mandatory and that he is not entitled to a bond hearing. A loss of liberty has been recognized as a significant irreparable harm. *Matacua v. Frank*, 308 F. Supp. 3d 1019,

1025 (D. Minn. 2018). Thus, by virtue of Petitioner's ongoing loss of liberty, he has demonstrated significant irreparable harm. This factor weighs in his favor.

### C. Balance of Harms and Public Interest

Last, the Court considers the balance of harms and the public interest. *Dataphase*, 640 F.2d at 114. The balance of harms and the public interest "merge when the Government is the party opposing the preliminary injunction." *Morehouse Enters., LLC v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 78 F.4th 1011, 1018 (8th Cir. 2023) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). There is no discernable harm that will come to Respondents by granting Petitioner's requested relief, nor would this Court's ruling interfere with ICE's proper enforcement of U.S. immigration laws. In contrast, preventing unlawful detention is a compelling issue of public importance. These factors weigh in Petitioner's favor.

### ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT Petitioner Francisco T.'s Emergency Motion for a Temporary Restraining Order (Doc. No. 3) is GRANTED as follows:

1. Respondents shall not remove, transfer, or otherwise facilitate the removal of Petitioner from the District of Minnesota during the pendency of this action. However, Respondents may request permission from this Court to move Petitioner if unforeseen and emergent circumstances require Petitioner's removal from the District.[6]

---

[6] After the August 27 hearing on this motion, both parties agreed that the relief previously ordered by the Court in the TRO Order should be modified to include this exception. If Respondents determine that transferring Petitioner out of the District of Minnesota is necessary due to some unforeseen or emergency circumstance, Respondents shall request

2. Respondents are enjoined form denying Petitioner a bond hearing on the basis that 8 U.S.C. § 1225(b)(2) applies to Petitioner and Respondents shall provide Petitioner with a bond hearing in accordance with 8 U.S.C. § 1226(a)(2)(A) within seven days of this Order.

3. Respondents shall file notice with the Court within twenty-four hours of the occurrence of the bond hearing. Such notice shall inform the Court when the bond hearing occurred and the outcome of the bond hearing.

Dated: August 29, 2025

/s/ *Jeffrey M. Bryan*
Judge Jeffrey M. Bryan
United States District Court

---

permission from the Court to move Petitioner at least 72 hours prior to transporting Petitioner. Any such request must include an explanation for the request as well as a proposed destination. The Court will then determine whether to grant the request and permit transfer of Petitioner.